IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT VAN VALIN, et al.,<br><br>      Plaintiffs,<br>v.<br><br>Carlos M. Gutierrez, in his Official<br>Capacity as Secretary of the U.S.<br>DEPARTMENT OF COMMERCE,<br><br>Conrad C. Lautenbacher, Jr.,<br>in his Official Capacity as<br>Administrator of the U.S.<br>NATIONAL OCEANIC AND<br>ATMOSPHERIC ADMINISTRATION,<br><br>James W. Balsiger, in his Official<br>Capacity as Acting Assistant<br>Administrator of the U.S.<br>NATIONAL MARINE FISHERIES<br>SERVICE,<br>      Defendants. | <u>Civil Action No. 1:08-cv-941</u> |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CONTINUE PRELIMINARY INJUNCTION HEARING

Plaintiffs Scott Van Valin, Ken Dole, Larry McQuarrie, Rick Bierman, Edwin Haney, Case Harris, Tom Ohaus, Carl "Chip" Porter, Patty Seaman, Theresa Weiser, and Donald Westlund, through counsel, respectfully submit this opposition to Defendants' Motion to Continue Preliminary Injunction Hearing, filed on June 16, 2008. Defendants' motion seeks to postpone the Court's decision on the entry of a preliminary injunction in order to allow Defendants to file a third brief in order "to clarify the legal authority" used by the agency in adopting the final rule and to explain "why its final rule was lawful and necessary for the conservation and management of the Pacific halibut fishery." See Defendants' Motion at 3. For

the reasons stated below, there is no basis on which to grant the motion, and granting the requested relief would cause continuing harm to Plaintiffs. The Court has found that Plaintiffs have met the standard for preliminary injunctive relief. *See* Order of June 13, entered *nunc pro tunc* with an effective date of June 10. Nothing in Defendants' motion casts any doubt on the correctness of that finding, and Plaintiffs therefore request that the Court enter the preliminary injunction on or before June 20, 2008, either with or without hearing as the Court deems appropriate.

1. **Defendants' Proffered Reason for Continuing the TRO to Allow Further Briefing Is Contradicted by the Final Rule.**

The bulk of Defendants' motion and the accompanying declaration by Dr. Balsiger simply repeat the legal framework from which the final rule arose and the procedural posture of the rule and the proceedings before this Court. Those recitations do not support the motion, and they require no response. The sole substantive justification offered in support of Defendants' motion appears at paragraphs 5 and 6 of Dr. Balsiger's Declaration. In paragraph 5, he states the obvious – that more halibut will likely be harvested by the charter sector under the old rules than under the final rule. This is not new information; the parties are before the Court precisely because the old and new rules are different. *See* 73 Fed. Reg. 30509 (May 28, 2008) (response to comment 23, describing difference). In paragraph 6 of his Declaration, Dr. Balsiger asserts that additional time is necessary to allow Defendants "to present additional relevant information and explanation to the Court as to why its action was *lawful and necessary for the conservation and management of the Pacific halibut fishery.*" *Id.* at ¶ 6 (emphasis added).

The italicized language in the quote immediately above suggests that further briefing would address: (1) the lawfulness of the final rule, and (2) why the final rule is necessary to meet conservation and management objectives. As to lawfulness, the challenge to the lawfulness of

2

the rule has been known to the Defendants since Plaintiffs filed their comments on the proposed rule in January. The issue was briefed in Plaintiffs' Motion for a TRO and/or a Preliminary Injunction and in Defendants' reply to that motion. Finally, that issue was the sole subject of a supplemental round of briefs and a second hearing conducted before the Court entered the temporary restraining order. Defendants here provide absolutely no indication of what further information or argument they might provide in a third round of briefing that will not simply be a repeat of arguments already made. As such, the motion amounts to nothing more than an unsupported request to defer entry of the preliminary injunction.

With respect to Dr. Balsiger's suggestion that further briefing will allow the government to discuss "conservation and management" and explain the "critical importance of long term management" of the fishery (Balsiger at ¶ 6; Defendants' Motion at 3), the suggestion flatly contradicts what the Secretary said in the final rule. This precise issue was raised and answered in the final rule in response to Comment 82:

> *Comment 82*: Unconstrained growth of the charter industry threatens the health of the fishery. In any one year, CEY may be overharvested if the projected charter harvest is higher than the assumed GHL level. These overages result in adjustments to the CEY and commercial catch limit the following year. Thus the issue poses a potential conservation concern, as well as a reallocation of allowable harvest.
>
> *Response*: NMFS agrees that if the guided charter fishery grows in any single year, halibut removals will exceed planned IPHC removals in the short run and the actual harvest rate may be greater than the rate on which the CEY for a year is based. However, in the medium and long term, the IPHC will adjust its harvest allowances for the commercial setline fishery to take account of changes in guided charter harvests. While this process will take place gradually over time, NMFS does not expect it to seriously affect the health of the halibut stock, unless the guided charter fishery were to grow at an unexpectedly high rate. Halibut are a long-lived species and the health of the stock depends less on removals in any single year (the short run) than it does on removals over a longer multiple-year period. The IPHC has also adopted conservative harvest policies to protect against resource damage. Furthermore, the environmental analysis prepared for this rule did not find that failure to limit the guided sport charter vessel halibut harvest to the GHL would cause significant environmental impacts on the resource.

73 Fed. Reg. at 30518.

This response by the Secretary – made as part of the announcement and analysis of the final rule – makes it quite clear that the final rule is not necessary for "conservation" or "long term management." *See* Balsiger at ¶ 6. As such, the response to Comment 82 directly contradicts what Dr. Balsiger proposes as a future argument that Defendants require additional time to develop. In addition, in response to Comment 81, which states: "There is a conservation issue," the Secretary responded: "NMFS disagrees." 73 Fed. Reg. at 30518. Finally, in response to Comment 78 the Secretary noted that "[n]either the EA/RIR/IFRA nor the proposed rule for this action identify overfished halibut stocks as the problem, or halibut recovery as an objective of this action." *Id.* at 30517.

Quite simply, Defendants are asking the Court to delay action on the preliminary injunction in order that Defendants may make a *post hoc* argument to the Court that the Secretary expressly rejected at the time the final rule was adopted. Such a request borders on the improper; it is, at a minimum, unpersuasive. Inasmuch as this is the only basis upon which Defendants seek a change to the schedule set by the Court, Defendants' request should be denied.

2.  **Delay in Entering the Preliminary Injunction Would Cause Additional Harm to Plaintiffs.**

In addition to the fact that Defendants have provided no credible basis for their motion, granting the requested relief would cause further harm to the Plaintiffs. As has been discussed in the pleadings and in the hearings, the nature of the harm caused by the final rule is that fishing clients who believe the one fish rule will apply have cancelled, and will continue to cancel, Area 2C reservations and seek to fish instead in areas that are not affected by the final rule. That threat of lost bookings has been removed for trips that will occur during the pendency of the

4

TRO (to the extent that those trips were not cancelled before entry of the TRO). For trips later in June, and for trips in July and August, the uncertainty – and the potential for further harm – continues until the preliminary injunction is entered. That harm, like the irreparable harm that the Court has found has been demonstrated by Plaintiffs and conceded by the Secretary, is irrecoverable. Accordingly, granting Defendants' wholly unsupported motion would in no small measure deny the very relief that the Court has already found to be appropriate.

If this were merely a matter of scheduling, Plaintiffs would consent, in the same way that they have not opposed delays to date associated with the opportunities that the Court has appropriately provided to Defendants to make their best case. Defendants here, however, abuse the judicial process by seeking to delay appropriate relief with vague promises of new arguments in the future – arguments that are expressly foreclosed by the Secretary's own explanation of the effect of the final rule and of the status quo ante. Defendants provide the Court with no reason why a third chance to re-argue old points would change the outcome here, and granting Defendants' request would further harm Plaintiffs. For all of these reasons, Plaintiffs urge the Court to deny Defendants' motion.

Respectfully submitted,

*[signature]*

John W. Butler (D.C. Bar No. 437370)
Robert K. Magovern (D.C. Bar No. 497862)
SHER & BLACKWELL LLP
1850 M Street, N.W.
Suite 900
Washington, DC 20036
(202) 463-2500 (Main)
(202) 463-2510 (Direct)
(202) 365-0059 (Cell)

Earl W. Comstock
COMSTOCK CONSULTING LLC
6225 30th Street, N.W.
Washington, DC 20015
(202) 255-0273
(Admitted in Alaska)

*Counsel for Plaintiffs*

June 17, 2008