IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT VAN VALIN, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| Carlos M. Gutierrez, in his Official | ) |
| Capacity as Secretary of the U.S. | ) |
| DEPARTMENT OF COMMERCE, | ) |
| | ) |
| | )  Civil Action No. 1:08-cv-941 |
| Conrad C. Lautenbacher, Jr., | ) |
| in his Official Capacity as | ) |
| Administrator of the U.S. | ) |
| NATIONAL OCEANIC AND | ) |
| ATMOSPHERIC ADMINISTRATION, | ) |
| | ) |
| James W. Balsiger, in his Official | ) |
| Capacity as Acting Assistant | ) |
| Administrator of the U.S. | ) |
| NATIONAL MARINE FISHERIES | ) |
| SERVICE, | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO CONTINUE PRELIMINARY INJUNCTION HEARING**

Plaintiffs Scott Van Valin, Ken Dole, Larry McQuarrie, Rick Bierman, Edwin Haney, Case Harris, Tom Ohaus, Carl "Chip" Porter, Patty Seaman, Theresa Weiser, and Donald Westlund, through counsel, respectfully submit this opposition to Defendants' Supplemental Brief in Support of Its Motion to Continue Preliminary Injunction Hearing, filed on June 18, 2008 ("Def. Third Br."). Defendants' third brief is merely a re-packaging of arguments already made and rejected by the Court. The brief does nothing to call into question the Court's finding that Plaintiffs are substantially likely to prevail on the merits and have otherwise met the

standard for preliminary injunctive relief. Moreover, if Defendants were successful in convincing the Court that nothing in the 2003 rulemaking beyond what was published in the Code of Federal Regulations has any legal effect, then Defendants would have succeeded in removing any colorable support for their argument that the final rule represents a "fair and equitable" allocation as is required by the Halibut Act. For all of these reasons, Defendants' request to continue the TRO should be denied, and a preliminary injunction should be entered. A proposed order is attached.

## ARGUMENT

1. <u>The 2003 GHL Rule Administrative Record and the Codified GHL Regulations in the Code of Federal Regulations Both Indicate that the Secretary Intended GHL-Based Harvest Restrictions to be Tied to Completed Fishing Years, Not Future Years.</u>

Defendants' primary argument, which has already been made, answered, and addressed by the Court, has two parts. The first part urges that the only portion of the 2003 GHL regulations that is binding on the Secretary is the portion that was published in the Code of Federal Regulations. Def. Third Br. at 3-6. The second part of Defendants' primary argument is that there is nothing in the GHL regulations in the C.F.R. that supports Plaintiffs' argument that GHL-based management measures are intended to follow rather than anticipate a harvest above the guideline harvest level. Both arguments are wrong.

As to the argument that the Secretary is bound only by what is published in the C.F.R., Defendants have now wisely retreated from their earlier, categorical assertion that "[a] preamble is nonbinding, explanatory material with no independent legal effect." Def. Supp. Brief at 5 (June 6, 2008). Instead, Defendants now cite *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533 (D.C. Cir. 1986), which, contrary to Defendants' characterization of the case, explains that

"[u]fortunately, there is no axiom to distinguish between regulations and general statements of policy." *Id.* at 536-537. As a later case from this Circuit explained: "The question of reviewability hinges upon whether the preamble has independent legal effect, which in turn is a function of the agency's intention to bind either itself or regulated parties. Absent an express statement to that effect, we may yet infer that the agency intended the preamble to be binding if what it requires is sufficiently clear." *Kennecott Utah Copper v. U.S. Dept. of Interior*, 88 F.3d 1191, 1223 (D.C.Cir 1996). "Agency intent is 'ascertained by an examination of the provision's language, its context, and any available extrinsic evidence.'" *Chiron Corp. v. NTSB*, 198 F.3d 935, 944 (D.C.Cir. 1999), *quoting Doe v. Hampton*, 566 F.2d 265, 281 (D.C. Cir. 1977). *See also Morton v. Ruiz*, 415 U.S. 199, 235 (1974)(agency bound by procedures in manual where entitlement to government benefits is affected by procedures).

Here, of course, how the GHL is used in connection with management measures has a direct effect on whether regulatory changes are gradual and predictable, allowing for necessary adjustments in business practices, or whether those changes upset settled expectations by charter operators and clients alike. Stability and predictability were stated as goals of both the 2003 GHL rulemaking and the final rule here. Defendants' position makes a mockery of that purpose.

With reference to the language, . . . content, and . . . available extrinsic evidence," *Chiron, supra.*, the preambles from the 2002 GHL notice of proposed rulemaking and the 2003 GHL final rule, as well as the 2003 GHL EA that was incorporated therein by reference, have been discussed extensively in previous pleadings, and we will not repeat those discussions here. *See* Pl. Mem. In Supp. of Prelim. Injunc. at 17-19; Pl. Resp. to Def. Supp. Br. at 3-9. It is sufficient for the purposes of this pleading to note that those documents consistently, repeatedly, and exclusively describe a regulatory process under which management measures that are

3

designed to react to overages of a given year's GHL will be implemented in years following that overage; they will not be adopted in order to anticipate an overage in a future year.[1]

As the parties agree, the 2003 GHL rules do not dictate any *specific* management measures that shall be adopted if a GHL is exceeded, but the stated purpose of those rules is "to implement a guideline harvest level (GHL) *for managing the harvest* of Pacific halibut in the guided recreational fishery . . . ." 68 Fed. Reg. 47246 (Aug. 8, 2003) (emphasis added). *How* such management measures will be adopted, in contrast to *what* those measures might be, *is* the subject of extensive discussion in the administrative record, and indeed the entire GHL exercise has no meaning outside of the context of those procedural rules. The 2003 GHL final rule states that: "It is intended to further the management and conservation goals of the Northern Pacific Halibut Act of 1982 (Halibut Act)." *Id.* It is unclear how a rule whose stated intent is to facilitate management can be read without consideration of its extensive description of how that management is to be carried out. For Defendants to say now that all of that discussion should be ignored relegates the ten years of effort that culminated in the GHL final rule to the status of an elaborate waste of time.

In addition to the fact that the circumstances of the GHL rules indicate that the Secretary did intend them to be binding regarding the basic relationship between the GHL level and any related harvest restrictions (i.e., that such restrictions would follow a harvest in excess of the GHL), the rules that were published in the C.F.R. reaffirm that conclusion. Accordingly, even under Defendants' overly restrictive test of what constitutes a binding regulation, the GHL rules qualify. Specifically, 50 C.F.R. § 300.65(c) states that: "If the GHL in either Area 2C or 3A is

---

[1] Defendants do not grapple with these indicia of the Secretary's intentions regarding his own rules. Instead, they discuss at length the facts in the primary case that they cite, *Brock*, facts that in no way parallel the facts here.

4

exceeded, NMFS will notify the Council in writing that the GHL has been exceeded within 30 days of receiving information that the GHL has been exceeded." If, as the Defendants now claim, the GHL rules were intended to trigger anticipatory harvest restrictions rather than backward-looking harvest restrictions, one is left to wonder why the text of the C.F.R. sets forth a notification procedure for past overages, but does not even mention harvest projections for future years or the relationship between such projections and the GHL for a season that has not yet occurred. Plaintiffs submit that the most logical answer is that the regulations contemplated no such relationship and no action based on such a relationship.

On the point of how the agency views its own GHL regulations, the response to Comment 42 is instructive. The comment was summarized in the final rule as: "The GHL is just a guideline, not a hard cap." The Secretary's response is set forth below in full:

> NMFS acknowledges that area-specific GHLs were established in 2003 as a guideline that, if exceeded, could prompt responsive management action to reduce charter vessel harvest amounts. The GHL has been exceeded since 2004. Thus, management action to reduce harvest to the GHL is completely within the management objective for the GHL provisions. The fact that a time lag exists between when a GHL overage occurs and responsive management action is implemented through rulemaking also was acknowledged when the GHLs were established.

73 Fed. Reg. at 30512 (May 28, 2008). The statement is instructive both because it ties "responsive management action" to an exceeded GHL, not a future GHL, and also because the Secretary acknowledges that the time lag that results from the backward-looking structure of the GHL system was discussed at the time that regime was adopted. It is also significant that the Secretary ascribes a "management objective" to the GHL regulations, something that cannot be found in the words codified in the C.F.R. Apparently the Secretary was unaware at the time that he issued the final rule of the arguments that he would be making three weeks later before this Court.

Nor is the example discussed immediately above the only instance in which the Secretary has himself relied upon parts of the 2003 GHL regulations that were not published in the C.F.R. In the final rule, the Secretary stated that "NMFS *must* choose a management option to restrict harvest to the GHL." 73 Fed. Reg. at 30515 (response to comment 66) (emphasis added). That is, on its face, an assertion that the Secretary considered himself bound to manage to the GHL. The Secretary made similar assertions elsewhere in the final rule. *See, e.g.,* 73 Fed. Reg. 30514 ("By Council policy, this necessitates corrective action to limit the charter fishery to the GHL."), and 73 Fed. Reg. 30515 ("NMFS must choose a management option to restrict harvest to the GHL."). There is, of course, no such mandate in the GHL regulations published in the C.F.R., so the Secretary had to have viewed the non-C.F.R. GHL regulatory materials as binding in order to have made such statements.

This sentiment that management to the GHL was somehow mandatory even though no such mandate appears in the GHL regulations published in the C.F.R. is also reflected in Defendants' first opposition brief (June 3, 2006) at 2. There, Defendants argue that "the Council and NMFS determined that the halibut regulations were necessary to effectuate the Council's intent to limit the charter halibut sector's harvest to the federally mandated GHL." Neither the "Council's intent" nor any directive to manage to the GHL is set forth in the GHL regulations published in the C.F.R., but Defendants nevertheless invoke the GHL regime and management measures connected to that regime as being mandatory.

As Plaintiffs have acknowledged, it is in fact not the case that the Secretary was compelled to manage within the GHL regime. The point here is simply that the Secretary has repeatedly invoked that GHL regime (including provisions not in the C.F.R.) as either (at a minimum) motivating his actions or (under a more natural reading) compelling those actions. In

light of that heavy reliance on the GHL regulations, it is inconsistent for the Secretary to now argue that he is not bound by the procedural framework also included in the GHL regulations. Quite simply, Defendants want to have it both ways – they wish to rely on the GHL number as a proxy for the "fair and equitable" allocation analysis that they have failed to conduct, but they disavow any responsibility to follow the procedural rules that those same GHL regulations announced. It cannot be the law that the Secretary may "cherry pick" from his own regulations. He must either reject those regulations and enunciate a new framework for his actions, which he has expressly not done here, *see* 73 Fed. Reg. at 30512 ("This rule was not designed to change . . . the GHL regulations"), or he must live with them as a whole.

2. <u>The Assertion That the Final Rule Was Adopted Independently of the GHL Regulations Is Expressly Contradicted by the Record.</u>

Defendants' second argument (Def. Third Br. at 3, 6-10) is that "the regulation at issue in this case constituted an entirely separate APA rule making outside any process that may have been established by the 2003 GHL rule." In support of that assertion, they argue that Plaintiffs' argument that the Secretary expressly invoked the 2003 GHL regulations is based on "isolated statements" in the record. Def. Third Br. at 8. The assertion is facially absurd. In addition the quotes cited in Defendants' brief, the Secretary said at 73 Fed. Reg. 30509 that "[t]he Council and NMFS' management objective for the halibut sport charter vessel fishery since 2003 has been to maintain harvest amounts to the GHL." He reiterated this objective when he said that "NMFS and the Council are moving forward to mange the charter vessel fishery consistent with the management objectives set forth since 2003." *Id.*

Finally, the Secretary's reliance on the GHL regulations is made clear in other statements, including his statement that "[t]his final rule is an outgrowth of the 2003 GHL rule

for the charter vessel fishery," 73 Fed. Reg. 30520. In fact, he expressly tied the final rule to the GHL regulations too many times to count:

**Proposed Rule**

      72 Fed. Reg. at 74257 ("This proposed regulatory change is necessary to reduce the halibut harvest in the charter sector to the GHL for Area 2C.");
      72 Fed. Reg. at 74258 ("The regulatory program proposed by this action is linked to…a previous action by the Council and NMFS to establish a guideline harvest level (GHL).");
      72 Fed. Reg. at 74259 ("Hence, a final rule establishing the GHLs was published….");
      72 Fed. Reg. at 74259 ("The ADF&G preliminary projections of the overage of the GHL in 2006 produced responses in 2007 from the Council and the three management agencies involved: IPHC, NMFS, and ADF&G.");
      72 Fed. Reg. at 74260 ("Unlike the IPHC, ADF&G, and NMFS actions, however, the Council's alternatives were designed to specifically maintain the charter vessel fishery to its GHL.");
      72 Fed. Reg. at 74260 ("NMFS encourages public comment on all regulatory options…to limit the catch of the guided sport charter vessel fishery in Area 2C to the GHL.");
      72 Fed. Reg. at 74261 ("[T]his action is to maximize the ability of NMFS to achieve the intent of the Council to limit the catch of the guided sport charter fishery in Area 2C to the GHL.");
      72 Fed. Reg. at 74262 ("The Council considered but did not recommend more liberal annual catch limits…which would allow a total charter vessel harvest in Area 2C closer to the GHL.");
      72 Fed. Reg. at 74262 ("[T]his action is to maximize the ability of NMFS to achieve the intent of the Council to limit the catch of the guided sport charter vessel fishery in Area 2C to the GHL.");
      72 Fed. Reg. at 74264 ("Two preferred options…were selected…that would minimize the impacts on small entities while still meeting the management objective of restricting the charter vessel harvest of halibut to the GHL.").

**Final Rule**

      73 Fed. Reg. at 30505 ("NMFS implements regulations to limit the harvest of Pacific halibut by guided sport charter vessel anglers…to the guidelines harvest level (GHL).");
      73 Fed. Reg. at 30505 ("this final rule is linked to…a previous regulation approved by the Secretary that establishes a guidelines harvest level (GHL) for managing the harvest of halibut by the guided sport charter vessel fishery.");
      73 Fed. Reg. at 30505 ("A more thorough discussion of the…GHL…is provided…in the rule that first implemented the GHL (August 8, 2003)….");
      73 Fed. Reg. at 30505 ("The GHL was implemented in 2003….");
      73 Fed. Reg. at 30506 ("The Council recommended this final rule specifically to maintain the charter vessel fishery at its GHL.");
      73 Fed. Reg. at 30506 ("With this final rule, NMFS implements [a] management measure to restrict halibut harvest by the charter vessel sector to the GHL.");

73 Fed. Reg. at 30506 ("Comments in favor of the rule generally expressed support for limiting the guided sport charter vessel sector harvest to the GHL....");

73 Fed. Reg. at 30507 ("The charter vessel GHL is established in regulations at § 300.65(c)....");

73 Fed. Reg. at 30508 ("The amount of halibut harvested in this fishery would need to be regulated by other management measures, including GHL restrictions (if the GHL program is not replaced with a different allocation)....");

73 Fed. Reg. at 30509 ("The purpose of this final rule is to reduce harvest to the GHL....");

73 Fed. Reg. at 30509 ("The Council and NMFS' management objective for the halibut guided sport charter vessel fishery since 2003 has been to maintain harvest amounts to the GHL.");

73 Fed. Reg. at 30505 ("Reducing the charter vessel fishery to retention of fish over 32 inches without other harvest constraints would not meet the intent of reducing harvest in this fishery to the GHL.");

73 Fed. Reg. at 30509 ("The status quo alternative would not achieve the policy directive...to maintain charter sector harvests amounts to the GHL....");

73 Fed. Reg. at 30510 ("The purpose of this final rule is to reduce the charter vessel fishery harvest to the GHL established for this fishery.");

73 Fed. Reg. at 30510 ("This prohibition also will help attain the management objective of limiting the charter vessel harvest of halibut in Area 2C to the GHL.");

73 Fed. Reg. at 30511 ("A one-fish daily bag limit...is the only management measure that may reduce the harvest to the GHL.");

73 Fed. Reg. at 30512 ("This final rule does not change the GHL provisions, only the management measures necessary to control harvest to the GHL.");

73 Fed. Reg. at 30512 ("This rule was not designed to change...the GHL regulations....");

73 Fed. Reg. at 30512 ("To change the GHL regulations would require a separate rulemaking.");

73 Fed. Reg. at 30512 ("Revising the GHL and the halibut sector allocations are beyond the scope of this final rule.");

73 Fed. Reg. at 30512 ("[M]anagement action to reduce harvest to the GHL is completely within the management objectives for the GHL provisions.");

73 Fed. Reg. at 30513 ("This final rule was designed to reduce the harvest of halibut in the charter vessel fishery to the GHL....");

73 Fed. Reg. at 30513 ("The objective of this final rule is to reduce the harvest of halibut in the Area 2C guided sport charter vessel fishery to the GHL.");

73 Fed. Reg. at 30513 ("This overage indicates an ongoing need for management measures to reduce harvest to the GHL.");

73 Fed. Reg. at 30515 ("NMFS must choose a management option to restrict harvest to the GHL.");

73 Fed. Reg. at 30515 ("The objective of this action is to limit halibut harvest by the guided sport charter vessel industry to the GHL.");

73 Fed. Reg. at 30519 ("This final rule was not designed to change...the GHL regulations....");

       73 Fed. Reg. at 30520 ("The purpose of this final rule is to reduce harvest of halibut in the Area 2C charter vessel fishery to the GHL.");

       73 Fed. Reg. at 30520 ("This final rule does not establish an annual catch limit and instead relies primarily on a one-fish daily bag limit to reduce the charter vessel harvest to the GHL.").

Defendants would apparently brush all of those references aside on the basis of the argument that, *because* the final rule regulates to the 2008 GHL, it could not be tied to the 2003 GHL regulations. See Def. Third Br. at 6-8. In other words, Defendants appear to argue that their failure to follow the GHL regulations after having invoked and relied upon them is in itself a statement of their intent to act outside of those regulations. The assertion is as flawed as it is audacious. That, however, is the sum and substance of the declarations of Dr. Balsiger and Ms. Salveson and the extensive argument offered on the basis of those declarations.[2]

Defendants compound their error by asserting not once, but twice, that the measures in the final rule were not triggered by a past overage. On page 7, they state that: "Significantly, there is no mention in the passage above that the management measures were intended to address a past GHL overage." On page 9, they claim that "[t]he agency expressed no desire or intention to address a past overage of a GHL . . . ." Not so. *See, e.g.*, 72 Fed. Reg. at 74259 ("The ADF&G preliminary projections of the overage of the GHL in 2006 produced responses in 2007 from the Council and the three management agencies involved . . . ."). The Council's response was to propose the rule that the Secretary adopted and that is under review here. That the 2006

---

[2] Defendants are correct (Def. Third Br. at 9) that Plaintiffs object to Defendants' attempt to augment the record. With the exception of *Midwater Trawlers Coop. v. Dept. of Commerce*, 393 F.3d 994 (9th Cir. 2004), a case from another circuit that allowed a supplemental explanation of a technical matter, the cases cited by Defendants deal with situations in which plaintiffs have been allowed to supplement the record because the agency has withheld necessary information. *See, e.g., Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). In any event, however, as discussed in the text, the argument that the declarations support (i.e., that violation of a regulation is evidence of an intent to operate under an alternative regulatory framework) is specious. Accordingly, there is no need for the Court to rule on whether augmentation of the record is allowable here.

overage was the trigger is reinforced by the fact that the Secretary in the proposed rule expressly sought comment on the accuracy of the 2006 harvest figures: "However, NMFS is particularly interested in public comment on these proposed regulations in light of the new final estimate of 2006 harvests of halibut by the charter vessel sector and the revised analysis of the proposed management measures, as indicated in the above paragraph." *Id.* at 74261. The referenced "above paragraph," not coincidentally, discusses the extent to which proposed management measures would bring the harvest within the 2006 GHL.

3.  **If Defendants Were To Prevail on Their Recycled Arguments Regarding the Binding Nature of the GHL Procedural Rules, They Would of Necessity Forfeit Any Argument that They Conducted an Adequate Analysis of Whether the Final Rule is Fair and Equitable.**

Plaintiffs argued in their Reply to Defendants' Supplemental Brief (June 9, 2008, at 9-11) that if the Defendants are successful in convincing the Court that nothing of the GHL regulations beyond what is printed in the C.F.R. has any meaning, then Defendants will have also succeeded in proving that there is no analytical basis to support the contention that the allocation effected by the final rule is fair and equitable as is required by the Halibut Act. Plaintiffs renew that argument here and refer the Court to the pages in their prior brief referenced above for its particulars.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Continue Preliminary Injunction Hearing should be denied, and a Preliminary Injunction should be entered in accordance with the Court's determination on June 10, 2008, that Plaintiffs have met the test for such relief.

Respectfully submitted,

*/s/ John W. Butler*

John W. Butler (D.C. Bar No. 437370)
Robert K. Magovern (D.C. Bar No. 497862)
SHER & BLACKWELL LLP
1850 M Street, N.W.
Suite 900
Washington, DC 20036
(202) 463-2500 (Main)
(202) 463-2510 (Direct)
(202) 365-0059 (Cell)

Earl W. Comstock
COMSTOCK CONSULTING LLC
6225 30th Street, N.W.
Washington, DC 20015
(202) 255-0273
(Admitted in Alaska)

*Counsel for Plaintiffs*

June 19, 2008

## CERTIFICATE OF SERVICE

Plaintiffs hereby certify that, in addition to service to the Defendants via the Court's ECF system, the following Opposition to Defendants' Supplemental Brief in Support of Its Motion to Continue Preliminary Injunction Hearing was also served on the individuals listed below via email and first class mail. Plaintiffs also separately informed these individuals by email that the Court's hearing is scheduled for 10:00 am on Friday, June 20, 2008.

Christopher T. Koegel
Manatt, Phelps & Phillips, LLP
700 12th Street, NW
Suite 1100
Washington, DC 20005
CKoegel@manatt.com

George J. Mannina, Jr.
Paul L. Knight
O'Connor & Hannan, L.L.P.
1666 K Street, N.W.
Suite 500
Washington, DC 20006-2803
gmannina@oconnorhannan.com
pknight@oconnorhannan.com

Robert K. Magovern

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT VAN VALIN, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| Carlos M. Gutierrez, in his Official ) | |
| Capacity as Secretary of the U.S. ) | |
| DEPARTMENT OF COMMERCE, ) | |
| ) | |
| ) | Civil Action No. 1:08-cv-941 |
| Conrad C. Lautenbacher, Jr., ) | |
| in his Official Capacity as ) | |
| Administrator of the U.S. ) | |
| NATIONAL OCEANIC AND ) | |
| ATMOSPHERIC ADMINISTRATION, ) | |
| ) | |
| James W. Balsiger, in his Official ) | |
| Capacity as Acting Assistant ) | |
| Administrator of the U.S. ) | |
| NATIONAL MARINE FISHERIES ) | |
| SERVICE, ) | |
| Defendants. ) | |
| ) | |

## [PROPOSED] ORDER

The Court, having considered Plaintiffs' Motion for a Temporary Restraining Order and/or a Preliminary Injunction following three rounds of briefing and three hearings held on June 4, 2008, June 10, 2008, and June 20, 2008, concludes that Plaintiffs have demonstrated a likelihood of success on the merits of their claims that the final rule adopted by the National Marine Fisheries Service is unlawful. The Court also finds that Plaintiffs have demonstrated that the balance of harms tips in favor of a stay because Plaintiffs would suffer irreparable harm if the rule is implemented and that Plaintiffs meet all factors favoring the entry of a preliminary injunction.

Accordingly, Plaintiffs' motion for a preliminary injunction is hereby is **GRANTED**. It is further **ORDERED** that Defendants, and their officers, agents, employees, and attorneys, are hereby ENJOINED and RESTRAINED from giving any effect to or otherwise taking any action to enforce the one-halibut daily bag limit restriction for charter vessel anglers found at 50 C.F.R. § 300.65(d)(2)(i). The daily bag limit restriction that was applicable in the International Pacific Halibut Commission ("IPHC") Area 2C previously found at 50 C.F.R. § 300.65(d) (2007) shall again become effective:

> § 300.65 Catch sharing plan and domestic management measures in waters in and off Alaska.
>
> (d) In Commission Regulatory Area 2C, halibut harvest on a charter vessel is limited to no more than two halibut per person per calendar day provided that at least one of the harvested halibut has a head-on length of no more than 32 inches (81.3 cm). If a person sport fishing on a charter vessel in Area 2C retains only one halibut in a calendar day, that halibut may be of any length.

*See* 72 Fed. Reg. 30714, 30727 (June 4, 2007)

In addition, the related restriction regarding retention of halibut carcasses previously found at 50 C.F.R. § 300.66(m) (2007) shall again become effective. That restriction provided, in pertinent part, that: "Filleted halibut may be possessed onboard the charter vessel provided that the entire carcass, with the head and tail connected as single piece, is retained onboard until all fillets are offloaded." *See* 72 Fed. Reg. 30714, 30728. Thus, when filleted halibut are retained onboard the charter vessel in IPHC Area 2C in accordance with Annual Management Measure 28(2), as set forth at 73 Fed. Reg. 12280, 12292 (March 7, 2008), the entire carcass, with the head and tail connected as a single piece, must be retained onboard until all fillets are offloaded. *See id.*, 72 Fed. Reg. 30728.

**SO ORDERED.**

Entered this _____ day of _____, 2008.

_____
UNITED STATES DISTRICT JUDGE