IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT VAN VALIN, et al.<br><br>   Plaintiffs,<br>v.<br><br>Carlos M. Gutierrez, in his Official<br>Capacity as Secretary of the U.S.<br>DEPARTMENT OF COMMERCE,<br><br>Conrad C. Lautenbacher, Jr.,<br>in his Official Capacity as<br>Administrator of the U.S.<br>NATIONAL OCEANIC AND<br>ATMOSPHERIC ADMINISTRATION,<br><br>James W. Balsiger, in his Official<br>Capacity as Acting Assistant<br>Administrator of the U.S.<br>NATIONAL MARINE FISHERIES<br>SERVICE,<br>   Defendants. | <u>Civil Action No. 1:08-cv-941</u> |

**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AS DEFENDANTS**

Plaintiffs Scott Van Valin, Ken Dole, Larry McQuarrie, Rick Bierman, Edwin Haney, Case Harris, Tom Ohaus, Carl "Chip" Porter, Patty Seaman, Theresa Weiser, and Donald Westlund, through counsel, respectfully submit this brief in opposition to the Proposed Intervenors Second Motion for Leave to Intervene as Defendants filed on June 24, 2008, by Linda Behnken, David Gibson, Sherri and Kurt Wohlhueter, North Pacific Seafoods, Inc., Sandy

Craig, Luke Wiedel, Carolyn Heuer, Seafood Producers Cooperative, the City of Pelican, the City of Port Alexander, and the Halibut Association of North America.[1]

Before addressing the merits of the motion for intervention, Plaintiffs first take issue with a number of factual misstatements made by the proposed intervenors regarding Plaintiffs' positions in this case. Intervenors claim that "[i]t is significant that the charter industry has never claimed that its allotment of halibut in Area 2C is unfair or incorrect." Int. Motion at 2. In fact, throughout this proceeding, Plaintiffs have argued that the Final Rule is not a fair and equitable allocation of halibut, and that the GHL is unfair and inequitable under the Halibut Act. Indeed, this is one of the causes of action in Plaintiffs' complaint, see Complaint at ¶¶ 52-54, 61-62, and it was significantly briefed in Plaintiffs' Motion for a Temporary Restraining Order. See Pl. Mem. in Support of TRO at 13-16.

Proposed intervenors also assert that Plaintiffs "do not deny" that the Final Rule and the GHL regulations upon which it relies "is a conservation-based determination." Int. Motion at 2. Intervenors' claim is flatly contradicted by the Secretary's own statements in the Final Rule,[2] the factual record upon which the Final Rule was based,[3] the Plaintiffs' submissions to this Court,[4]

---

[1] Similar to their first motion to intervene, the bulk of intervenors' brief focuses on issues that are relevant to the merits of the Secretary's Final Rule. Plaintiffs will address those arguments at the appropriate time should the Court choose to grant the motion for intervention. In this opposition, however, Plaintiffs only respond to the points and authorities raised in intervenors' motion that are relevant to the entry of a preliminary injunction.

[2] See 73 Fed. Reg. 30504, 30517-18 (May 28, 2008).

[3] See Final EA/RIR/FRFA at page xi, xii, 16, 22, 23.

[4] See Complaint at ¶ 8; Pl. Mem. in Support of TRO at 12-14; Pl. Opp. Def. Mot. To Continue Preliminary Injunction Hearing at 3-4.

the government's concessions at oral argument,[5] and the Court's own findings after three separate hearings, all of which demonstrate that there is no conservation issue in this case.

Turning to the merits of the motion, as the Court will recall, this is the proposed intervenors' second motion to intervene in this case. In Plaintiffs' opposition to the first motion to intervene, Plaintiffs explained that they did not object to intervention for the purposes of addressing the merits, but did oppose intervention for the purpose of attempting to prevent the conversion of the temporary restraining order to a preliminary injunction. Following the Court's grant of a preliminary injunction, the proposed intervenors have now re-filed their motion to intervene as defendants, and "[i]n light of the immediacy of the pending issue of the Preliminary Injunction [have] request[ed] expedited consideration of [their] Motion to Intervene." Int. Motion at 2. Although Plaintiffs still do not object to intervention for the purpose of addressing the merits, the proposed intervenors have nonetheless made their intentions of challenging this Court's grant of the preliminary injunction clear. For that limited purpose, Plaintiffs oppose intervention on the grounds that the prospective intervenors have not met their burden of demonstrating that they have standing.[6]

Under well-settled case law in this Circuit, "in addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution." *Fund for Animals, Inc. v. Norton*, 322

---

[5] *See* June 10, 2008, Transcript at 28 (attached as Exhibit 1 to Plaintiffs' first opposition to the motion to intervene).

[6] In addition to lack of standing with respect to challenging the preliminary injunction, the proposed intervenors do not meet the requirements of either Rule 24(a) or (b) for that same purpose because: (1) the motion for intervention is not timely, and (2) intervenors do not have a sufficient interest or claim warranting protection. With respect to these arguments, Plaintiffs hereby incorporate by reference their opposition to the first motion for intervention, which was filed on June 19, 2008.

F.3d 728, 731-32 (D.C. Cir. 2003). To establish standing, "a prospective intervenor – like any party – must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Id.* at 732-733 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In order to properly evaluate whether the proposed intervenors have standing under this three-part test, it is necessary to look at the relief being sought. In this regard, to the extent that the relief being sought by the proposed intervenors is to challenge the entry of a preliminary injunction (as opposed to addressing the merits of the case), the proposed intervenors' motion fails to demonstrate both injury-in-fact and redressability.

To demonstrate sufficient "injury-in-fact," the proposed intervenors must show that their injuries are "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal citations omitted). With respect to the entry of a preliminary injunction, none of the proposed intervenors have done so. As Plaintiffs demonstrated in their Memorandum in Support of a TRO (at 11-12), as well as in their Opposition to the First Motion to Intervene (at 7-8), temporary injunctive relief will have absolutely no effect on and will not change the quota allocated to commercial fisherman in 2008. The total allowable catch for the commercial sector has already been fixed by the IPHC and the Secretary for the 2008 commercial season. *See* 73 Fed. Reg. 12280 (Mar. 7, 2008). A temporary delay in the effectiveness of the rule under review here would have zero impact on the allowable harvest for the commercial sector in 2008. *Id.; see also* Pl. Motion for TRO at 11-12; EA/RIR/FRFA at 78 (Table 58). As a result, neither the proposed intervenors who are commercial fisherman, nor the halibut processors to whom they sell fish or the local communities to whom they pay taxes, will see any increase or decrease in the amount of fish or revenues that they would receive from such fish in 2008.

4

In their motion these categories of proposed intervenors also provide this Court (at 25-28) with allegations of potential harm in 2009 and beyond. These assertions at present are speculative at best, and may or may not occur depending on the Court's decision on the merits. In any event, there is no question that these alleged harms for purposes of the preliminary injunction are not "concrete and particularized," but are instead "conjectural" and "hypothetical." *Lujan*, 504 U.S. at 560.

With respect to intervenors who are subsistence users, the motion to intervene does not state any specific injury or harm and neither the preliminary injunction nor the Final Rule itself have any impact on subsistence users. Subsistence harvests are not restricted by this rule. 73 Fed. Reg. at 30518 (response to comment 84). The IPHC deducts subsistence catch from the Total CEY along with other removals, and the amount of charter halibut caught has no impact on the allowable level of subsistence harvest. *See* 73 Fed. Reg. at 30505 (Management of Halibut Fisheries). The motion asserts that localized depletion of halibut stocks will increase in the absence of the one halibut a day rule, but the Secretary twice rejected this assertion in the Final Rule. *See* 73 Fed. Reg. at 30507 (response to comment 5) and 30517 (response to comment 77).

Likewise, the motion does not state any specific harm or injury to intervenors who are charter operators other than vague concerns about conservation of the resource. As discussed above, the Secretary has clearly stated in the Final Rule that this is purely an allocation issue and not a conservation issue, so to the extent that charter operators are able to harvest less, what they do not catch will in general be allocated to the commercial fleet and will therefore not improve the health of the halibut resource. In fact, as Exhibit 1 to the IPHC *amicus* brief makes clear, the IPHC itself is not concerned about exceeding the Total CEY in any given year as evidenced by the fact that the IPHC in 2008 allocated 2.29 million pounds above the Fishery CEY (the amount

5

remaining for commercial fishing after all other removals are deducted from the Total CEY) to the commercial fleet.

Second, all of the proposed intervenors have failed to demonstrate that any alleged injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 43 (1976)). As the request for relief changes, the analysis of whether there is redressability must also change. Here, for purposes of intervenors' challenge of the entry of a preliminary injunction, nothing this Court does with respect to the preliminary injunction will affect the total allowable catch for the commercial sector in 2008. The proposed intervenors do not (and can not) dispute this point. Nor will it affect the amount subsistence users may harvest, or have any conservation impact on the resource. Thus, proposed intervenors have failed to show that any alleged injury with respect to the preliminary injunction will be "redressed by a favorable decision" of this Court.

As the Court recognized at the June 20, 2008, hearing, the proposed intervenors' burden to establish standing to intervene in this case is significant. "Standing cannot be inferred argumentatively but rather must affirmatively appear in the record." *Advanced Management Tech. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) (internal citations omitted). "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Idaho v. ICC*, 35 F.3d 585, 590 (D.C. Cir. 1995). "If he fails to make the necessary allegations he has no standing." *Suncom Mobile & Data v. FCC*, 87 F.3d 1386, 1388 (D.C. Cir. 1996). Proposed intervenors have failed to carry this burden, and therefore their motion for intervention for purposes of challenging the preliminary injunction should be denied.

6

**Conclusion**

Plaintiffs have no objection to intervention for the purposes of addressing the merits. However, for the reasons stated herein, for purposes of intervention to challenge the Court's issuance of a preliminary injunction, Plaintiffs respectfully request that this Court deny the Motion to Intervene as Defendants.

Respectfully submitted,

*/s/ John W. Butler*

John W. Butler (D.C. Bar No. 437370)
Robert K. Magovern (D.C. Bar No. 497862)
SHER & BLACKWELL LLP
1850 M Street, N.W.
Suite 900
Washington, DC 20036
(202) 463-2500 (Main)
(202) 463-2510 (Direct)
(202) 365-0059 (Cell)

Earl W. Comstock
COMSTOCK CONSULTING LLC
6225 30th Street, N.W.
Washington, DC 20015
(202) 255-0273
(Admitted in Alaska)

*Counsel for Plaintiffs*

June 25, 2008